# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNOMEDICAL A/S,

      *Plaintiff,*

vs.

SMITHS MEDICAL MD, INC.,

      *Defendant.*

CASE NO. 1:09-cv-04375

Judge John W. Darrah
Magistrate Judge Sidney I. Schenkier

**UNOMEDICAL'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE
SMITHS' FOURTH, SEVENTH AND NINTH AFFIRMATIVE DEFENSES
<u>AND TO DISMISS SMITHS' NON-PATENT COUNTERCLAIMS</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ..................................................................................................... 1

    A.  Smiths Failed To Sufficiently Plead Its Inequitable Conduct
    Defenses (Fourth And Ninth Affirmative Defenses) ....................................... 1

        1.  Smiths Has Not Alleged Facts Sufficient To Support A
        Legal Inference Of Deceptive Intent ....................................................... 1

        2.  Smiths Has Not Alleged Facts Sufficient To Support Its
        Non-Cumulativeness Allegation ............................................................. 5

    B.  Smiths Failed To Sufficiently Plead Its Antitrust Counterclaims
    (Counterclaims VI, VII, And VIII) ................................................................. 6

        1.  Smiths' *Walker Process* Claim Does Not Plead Fraud
        With Particularity, As Fed. R. Civ. P. 9(b) Requires ........................... 6

        2.  Smiths' Sham Litigation Counterclaim Fails To
        Sufficiently Plead Objective and Subjective Baselessness ................... 9

        3.  Smiths' Minnesota Antitrust Counterclaim Falls With Its
        Other Antitrust Counterclaims ............................................................. 11

    C.  Smiths Failed To Sufficiently Plead Its False Advertising
    Counterclaims (Counterclaims IV And V) ..................................................... 11

    D.  Smiths Failed To Sufficiently Plead Its Tortious Interference
    Counterclaim (Counterclaim III) ................................................................... 14

    E.  Smiths Failed To Sufficiently Plead Its Patent Misuse
    Affirmative Defense (Seventh Affirmative Defense) ..................................... 14

    F.  Smiths Should Not Be Given Leave To Amend Its Insufficient
    Pleadings ....................................................................................................... 14

III.  CONCLUSION ................................................................................................. 14

**Cases**

*Abbott Labs. v. Mylan Pharms., Inc.*,
   No. 05 C 6561, 2007 WL 625496 (N.D. Ill. Feb. 23, 2007) ................................. 7

*Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*,
   812 F.2d 1381 (Fed. Cir. 1987) ............................................ 10

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................. 6, 8, 10

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
   No. 93 C 20149, 1993 WL 515859 (N.D. Ill. Dec. 13, 1993) ......................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................. 1, 10

*Bone Care Int'l, LLC v. Pentech Pharms., Inc.*,
   No. 08-cv-1083, 2010 U.S. Dist. LEXIS 39984 (N.D. Ill. Apr. 23, 2010) .......... 6

*Caliber Partners, Ltd. v. Affeld*,
   583 F. Supp. 1308, 1312 (N.D. Ill. 1984) ...................................... 13

*CardioNet, Inc. v. LifeWatch Corp.*,
   No. 07 C 6625, 2008 WL 567031 (N.D. Ill. Feb. 27, 2008) ....................... 11

*Chicago Consulting Actuaries, LLC, v. Scrol*,
   No. 05 C 1320, 2005 WL 819555 (N.D. Ill. Apr. 6, 2005) ....................... 13

*Chiron Corp. v. Abbott Labs.*,
   156 F.R.D. 219 (N.D. Cal. 1994) ............................................ 1, 5

*CIVIX-DDI, LLC v. Cellco P'ship.*,
   387 F. Supp. 2d 869 (N.D. Ill. 2005) ....................................... 3, 4, 5

*CIVIX-DDI, LLC v. Hotels.com, L.P.*,
   711 F. Supp. 2d 839 (N.D. Ill. 2010) ...................................... 3, 4, 5

*Daiichi Sankyo, Inc. v. Apotex, Inc.*,
   No. 030937, 2009 WL 1437815 (D.N.J. May 19, 2009) ............................. 7

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ........................................ 1, 2, 6, 8

*First Health Group Corp., v. BCE Emergis Corp.*,
   269 F.3d 800 (7th Cir. 2001) .............................................. 12, 13

*General Ins. Co. of Am. v. Clark Mall Corp.*,
No. 08 C 2787, 2010 U.S. Dist. LEXIS 98052 (N.D. Ill. Sept. 20, 2010)...................... 8, 9

*GMP Techs., LLC v. Zicam, LLC*,
No. 08 C 7077, 2009 U.S. Dist. LEXIS 115523 (N.D. Ill. Dec. 9, 2009) .......................... 8

*Haney v. Timesavers, Inc.*,
900 F. Supp. 1378 (D. Or. 1995) ................................................................................. 4, 5

*Hickman v. Wells Fargo Bank N.A.*,
683 F. Supp. 2d 779 (N.D. Ill. 2010) ............................................................................. 8

*Implant Innovations, Inc. v. Nobelpharma AB*,
No. 93 C 7489, 1995 WL 562092 (N.D. Ill. Sep. 14, 1995)............................................. 7

*In re DDAVP Direct Purchaser Antitrust Litigation*,
585 F.3d 677 (2d Cir. 2009) ......................................................................................... 9

*In re Gabapentin Patent Litig.*,
649 F. Supp. 2d 340 (D.N.J. 2009) ................................................................................ 9

*Installation Serv., Inc. v. Elec. Research, Inc.*,
No. 04 C 6906, 2005 WL 645244 (N.D. Ill. Mar. 21, 2005) ........................................... 13

*ISI Int'l , Inc. v. Borden Ladner Gervais LLP*,
316 F.3d 731 (7th Cir. 2003) ....................................................................................... 13

*Lincoln Nat'l Life v. Jackson Nat'l Life Ins. Co.*,
No. 1:07-CV-265, 2010 U.S. Dist. LEXIS 43687 (N.D. Ind. May 3, 2010) ....................... 6

*Midwest Grinding Co. v. Spitz*,
976 F.2d 1016 (7th Cir. 1992) ..................................................................................... 12

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
165 F.3d 891 (Fed. Cir. 1998) ...................................................................................... 9

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995) ....................................................................................... 4

*MPC Containment, Sys., v. Moreland*,
No. 05 C 6973, 2006 WL 2331148 (N.D. Ill. Aug. 10, 2006).................................... 11, 12

*Nieto v. Perdue Farms, Inc.*,
No. 08-07399, 2010 WL 1031691 (N.D. Ill. Mar. 17, 2010) ...................................... 8, 14

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998) ..................................................................................... 7

*Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*,
359 F. Supp. 948 (S.D. Fla. 1972) ................................................................................. 4

*Prima Tek II, LLC, v. Polypap SARL,*
  316 F. Supp. 2d 693 (S.D. Ill. 2004)............................................................ 4, 5

*Schwarz Pharma, Inc. v. Breckenridge Pharm., Inc.,*
  388 F. Supp. 2d 967 (E.D. Wisc. 2005)............................................................ 13

*Simonian v. Cisco Sys., Inc.,*
  No. 10 C 1306, 2010 WL 2523211 (N.D. Ill. June 17, 2010) ............................ 4

*Tatum v. Oberg,*
  650 F. Supp. 2d 185 (D. Conn. 2009)............................................................ 12

*Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag,*
  207 F. Supp. 2d 221 (S.D.N.Y. 2002) ............................................................ 10

*Vanguard Prods. Group, v. Merch. Techs., Inc.,*
  No. 07-CV-1405-BR, 2008 WL 939041 (D. Or. Apr.3, 2008) .......................... 14

## Statutes

35 U.S.C. § 112.............................................................................................. 6, 7, 8

## Other Authorities

Manual of Patent Examining Procedures
  § 609.05(b) (8th ed., rev. 5, Aug. 2006) ............................................................ 5

Manual of Patent Examining Procedures,
  § 609.06 (8th ed., rev. 5, Aug. 2006).............................................................. 5

Manual of Patent Examining Procedures,
  § 2004 (8th ed., rev. 5, Aug. 2006).............................................................. 4

Manuel of Patent Examining Procedures
  § 2004 (4th ed., rev. 5, Jan. 1981) ............................................................ 4

## Rules

Fed. R. Civ. P. 9(b) .................................................................... 5, 6, 7, 12, 13

## I.  INTRODUCTION

Contrary to Smiths' arguments, Unomedical is not asking this Court to hold Smiths to a higher standard than that required by the Federal Rules of Civil Procedure and controlling case law.  Rather, Unomedical's motion is centered squarely on the deep legal insufficiencies in Smiths' pleadings.  Smiths, on the other hand, would have this Court essentially re-write the Federal Rules to eliminate the particularity that Congress and the courts rightly require of pleadings that involve allegations of motive and intent and otherwise take aim at reputation.  *See Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219, 221-22 (N.D. Cal. 1994); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007).  The motion to strike certain defenses and to dismiss the non-patent counterclaims should be granted.

## II.  ARGUMENT

### A.  Smiths Failed To Sufficiently Plead Its Inequitable Conduct Defenses (Fourth And Ninth Affirmative Defenses)

#### 1.  Smiths Has Not Alleged Facts Sufficient To Support A Legal Inference Of Deceptive Intent

Smiths' inequitable conduct defense must be stricken because its pleadings do not approach, let alone cross, the threshold of specificity required for this Court to reasonably infer that Jane Doe acted with deceptive intent to mislead the PTO.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 (Fed. Cir. 2009).  "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith."  *Id.* at 1329 n.5.  A reasonable inference of deceptive intent must be supported by specific factual allegations showing that the accused individual knew about withheld material information and decided to withhold it with a specific intent to deceive the PTO.  *Id.* at 1328-29.  Significantly, mere knowledge of prior art references, without more, is not enough to attribute specific knowledge of their materiality.  *Id.* at 1330.

Smiths points only to two allegations in its pleadings from which it asks this Court to draw an inference of deceptive intent based on Jane Doe's alleged burying of material information[1]: (1) that because Jane Doe submitted certain references to the PTO, it follows that she was aware of their alleged materiality, and (2) that Jane Doe refused the Examiner's request to identify those references she believed were of particular relevance to the claimed invention. (Dkt. 19 at ¶ 22A-D; Dkt. 143 at 6, 11). Neither separately nor together, nor as embellished upon by Smiths, are these allegations enough for Smiths' inequitable conduct pleading to survive under *Exergen*.

First, Smiths is not entitled to an inference of deceptive intent from its pleading that Jane Doe submitted the allegedly material prior art references to the PTO. (Dkt. 143 at 11; Dkt. 19 at ¶ 22.) It simply cannot reasonably be assumed from the mere act of having a reference in hand and providing it to the PTO Examiner that the person providing the reference understood or even knew about all that it contained. *See Exergen*, 575 F.3d at 1330. As the Federal Circuit said in *Exergen*, "[a] reference may be many pages long, and its various teachings may be relevant to different applications for different reasons. Thus, one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Id.*

Second, Smiths' allegation that Jane Doe "refused" to highlight material prior art references despite a request to do so is equally insufficient.[2] There is no duty to respond to such a request from the Examiner, as Unomedical explained in detail in its opening brief. (*See* Dkt.

---

[1] Smiths' opposition brief acknowledges that its inequitable conduct defense rests solely on its allegation that Jane Doe allegedly buried certain prior art references. (Dkt. 143 at 12.)

[2] Notably, while Smiths' opposition postures that Jane Doe "refused" to respond to the Examiner's request, (*e.g.*, Dkt. 143 at 3, 11), its Answer merely alleges the benign fact that "Doe did not respond to [the Examiner's] request." (Dkt. 19, ¶ 22D).

141 at 8-9 and n.2 and cases cited.) Absent a duty to respond, an inference of deceptive intent would be wholly unreasonable. The cases cited by Smiths do not suggest otherwise.

For example, *CIVIX-DDI, LLC v. Hotels.com, L.P.*, is strikingly different on its facts, even though Smiths casts it as involving "nearly the same factual situation present here." (Dkt. 143 at 6). 711 F. Supp. 2d 839, 848 (N.D. Ill. 2010) ("*Civix 2010*"). The pleadings in *Civix 2010* alleged that, in an earlier lawsuit to which Civix was a party, three prior art references were the subject of a motion for summary judgment of invalidity of a predecessor patent. During the prosecution of the progeny patent at issue in *Civix 2010*, the prosecuting attorney included the three allegedly invalidating references among a group of approximately 598 references submitted to the PTO. *Id*. at 848. However, nothing in the prosecution histories showed that the Examiner's attention was drawn to these references or that the Examiner otherwise knew of their relevance. *Id.* On these very particular – and very different – facts, the court denied Civix's motion for judgment on the pleadings. *Id*. at 849. Here, Smiths has not alleged, and cannot allege, a single fact to suggest that Jane Doe, unlike the prosecuting attorney in *Civix 2010*, knew or had reason to know that any of the submitted references were most significant to the prosecution. *Civix 2010* is inapplicable here.

Moreover, Smiths ignores the related decision in *CIVIX-DDI, LLC v. Cellco P'ship*. 387 F. Supp. 2d 869 (N.D. Ill. 2005) ("*Civix 2005*"). In *Civix 2005*, the court held that non-disclosure of the significance of certain prior art was sufficient under the circumstances there to support an inference of deceptive intent. *Id.* at 908. However, the court specifically exempted from its holding the very circumstance that exists here, namely, that "the mere submission of a

large quantity of prior art documents, by itself [does not constitute] inequitable conduct . . . ."

*Id.*[3]

    Smiths never comes to grips with the fact that Jane Doe had no duty to respond to the

Examiner's request, and that, absent facts supporting that the allegedly "buried" references were

specifically made known to her as in *Civix 2010* and *Civix 2005*, her silence cannot reasonably

support an inference of deceptive intent.[4] *See Simonian v. Cisco Sys., Inc.*, No. 10 C 1306, 2010

WL 2523211, at *3 (N.D. Ill. June 17, 2010) (allegations relied upon to support an inference of

deceptive intent were "based upon information and belief [and] unsupported by specific facts,"

---

[3] Smiths' other citations are likewise unavailing to its opposition. (Dkt. 143 at 5-7.) Thus, the MPEP, consistent with *Civix 2010, recommends* that, in situations where a long list of references is submitted to the PTO, the applicant should "highlight those documents which *have been specifically brought to the applicant's attention and/or are known to be of most significance.*" Manual of Patent Examining Procedures ("MPEP"), § 2004 (8th ed., rev. 5, Aug. 2006) (emphasis added). This section of the MPEP, like *Civix 2010*, is inapplicable here because Smiths has not pled facts sufficient to suggest that any specific reference had been brought to Jane Doe's attention as being the most significant or that she knew any one of them to be especially significant. The MPEP is further inapplicable because it merely "recommends" a course of action; it does not create a duty. *Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.*, is also inapposite because, unlike here, in that case the patent applicant affirmatively and seriously misrepresented the prior art. 359 F. Supp. 948, 964-65 (S.D. Fla. 1972). Likewise, Smiths' reliance on *Molins PLC v. Textron, Inc.*, is misplaced. 48 F.3d 1172 (Fed. Cir. 1995). The statement in *Molins* that burying a particularly material reference can be "probative of bad faith," (*see* Dkt. 143 at 7), rests on a requirement from an earlier version of the MPEP that no longer existed by the time of the prosecution of the patent-in-suit. *See* MPEP § 2004 (4th ed., rev. 5, Jan. 1981). Moreover, the Federal Circuit specifically ruled in *Molins* that the district court erred in finding that, at the reexamination stage, the patent applicant had buried a material reference among "a multitude of other references," where the prosecution history showed that the examiner initialed each submitted reference, indicating his consideration of them. *Molins*, 48 F.3d at 1183-84. In such a situation, according to the Federal Circuit, absent proof to the contrary, "we assume that the examiner did consider the references." *Id.* So, too, here, it is plain from the face of the '493 patent, which includes a listing of the cited references, that the Examiner in fact considered each of the purportedly material references. *See also Prima Tek II, LLC, v. Polypap SARL*, 316 F. Supp. 2d 693, 710 (S.D. Ill. 2004), *rev'd on other grounds*, 412 F.3d 1284 (Fed. Cir. 2005); *Haney v. Timesavers, Inc.*, 900 F. Supp. 1378, 1382 (D. Or. 1995).

[4] The only reasonable inference is that Jane Doe did not believe that any one reference was more relevant than another.

and therefore did not satisfy the Rule 9(b) pleading standard); *see also Civix 2010*, 711 F. Supp. 2d at 849; *Civix 2005*, 387 F. Supp. 2d at 908.

Smiths does, however, acknowledge that "if Smiths has no more evidence than what appears in the file history for the '493 patent after thorough discovery, it might not prevail on the merits." (Dkt. 143 at 8.) Smiths apparently hopes to skate right by the serious deficiencies in its pleadings and embark on a discovery assault against Unomedical. This kind of strategy is just the sort that the pleading requirements of the Federal Rules were designed to prevent. *See Chiron*, 156 F.R.D. at 221 ("Vague allegations of inequitable conduct may also be the launching of a 'fishing expedition,' allowing the accuser to embark on wide-ranging discovery upon a thimble-full of facts. This is precisely the sort of tactical maneuvering that Rule 9(b) is designed to deter." (citation omitted)).

### 2. Smiths Has Not Alleged Facts Sufficient To Support Its Non-Cumulativeness Allegation

Smiths also has not adequately pled that the allegedly buried references are non-cumulative of other art considered by the Examiner. While Smiths dwells at length on the information allegedly found in the '210, '310, and '064 patents, (Dkt. 143 at 8-10), it has no factual basis for its allegation that the Examiner did not consider these references. In fact, the presumption is that the Examiner *did* consider the references because they are identified on the face of the '493 patent. *See* Manual of Patent Examining Procedures ("MPEP") §§ 609.05(b), 609.06 (8th ed., rev. 5, Aug. 2006) ; *Prima Tek II*, 316 F. Supp. 2d at 710; *Haney v. Timesavers, Inc.*, 900 F. Supp. at 1382.

Moreover, Smiths' pleadings do not include any factual foundation from which it reasonably may be assumed that the allegedly withheld information was not present in other prior art considered by the Examiner. Thus, Smiths' reliance on *Lincoln National Life v. Jackson*

*National Life Insurance Co.* is misplaced because in that case the pleadings *did* provide notice of

how the information would have changed the Examiner's decision. *See* No. 1:07-CV-265, 2010

U.S. Dist. LEXIS 43687, at *22 (N.D. Ind. May 3, 2010).[5]  Under *Exergen*, it is not enough to

say, as Smiths does here, that an allegedly withheld reference contains material information. *See*

*Exergen*, 575 F.3d at 1329-30.  Underlying factual allegations are needed to show "why" the

withheld information is material and not cumulative. *Id.*

Smiths' Ninth Affirmative Defense of inequitable conduct should be stricken.  Smiths

concedes that its Fourth Affirmative Defense is duplicative and has agreed to withdraw it.

(Dkt. 143 at 21.)  This defense also should be stricken.

### B.     Smiths Failed To Sufficiently Plead Its Antitrust Counterclaims (Counterclaims VI, VII, And VIII)

#### 1.     Smiths' *Walker Process* Claim Does Not Plead Fraud With Particularity, As Fed. R. Civ. P. 9(b) Requires

For its *Walker Process* claim to survive, Smiths was required to do more than provide

notice.  It was required to establish through its pleadings that its "claim has facial plausibility."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard . . . asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (cited case omitted).  Smiths'

pleadings fall far short of this standard.

Smiths' *Walker Process* fraud claim rests on three sets of alleged facts: (1) Smiths'

inequitable conduct burying allegations (Dkt. 19 ¶¶ 22, 72-103); (2) Smiths' allegation that

"Unomedical knew at the time the '493 patent issued that at least claims 23 through 35 were

invalid for failure to comply with 35 U.S.C. § 112"  (Dkt. 19 ¶¶ 68-70); and (3) that

---

[5] Smiths' reliance on *Bone Care International, LLC v. Pentech Pharmaceuticals, Inc.*, also is misplaced. *See* No. 08-cv-1083, 2010 U.S. Dist. LEXIS 39984, at *18-21(N.D. Ill. Apr. 23, 2010).  Unlike here, in *Bone Care*, the allegedly material references that were *not* submitted to the Examiner during prosecution had been used to reject similar claims in a related patent application, thus illustrating their materiality.

"Unomedical and/or those associated with the prosecution of the '493 patent knowingly withheld [three prior art references] from the examiner during the prosecution of the '493 patent" (Dkt. 19 ¶¶ 104-109). These alleged facts do not plead a facially plausible fraud claim because Smiths has not alleged facts remotely supportive of the accusations.[6]

Smiths' burying allegations do not meet the pleading requirements for inequitable conduct, as already explained above. The showing of intent and materiality required for *Walker Process* fraud is greater than that required for inequitable conduct. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070-71 (Fed. Cir. 1998). Therefore, Smiths' allegations based on alleged burying necessarily are insufficient to support its *Walker Process* pleading. *See Daiichi Sankyo, Inc. v. Apotex, Inc.*, No. 030937, 2009 WL 1437815, at *6 (D.N.J. May 19, 2009) (dismissing *Walker Process* counterclaim based on finding of no inequitable conduct where both claims were founded upon the same allegedly fraudulent conduct before the PTO).

Smiths' withholding and § 112 allegations also fail to meet the pleading requirements for a *Walker Process* claim, which must include fraud allegations that specifically plead "who, what, when, and where." *See Implant Innovations, Inc. v. Nobelpharma AB*, No. 93 C 7489, 1995 WL 562092, at *5 (N.D. Ill. Sept. 14, 1995) (*Walker Process* claim must plead "who, what, when, and where"); *see also Abbott Labs. v. Mylan Pharms., Inc.*, No. 05 C 6561, 2007 WL 625496, at *3 (N.D. Ill. Feb. 23, 2007) ("*Walker Process* claims . . . are subject to the heightened pleading requirements of Rule 9(b)).").

As Unomedical showed in its opening brief, (Dkt. 141 at 10-12), Smiths has not pled the "who" requirement with particularity. Smiths' opposition ignores this deficiency. Instead, Smiths repeatedly argues that "Unomedical knows (or should know)" (Dkt. 143 at 13);

---

[6] It is unclear from Smith's opposition whether it is relying on its § 112 and withholding prior art allegations to support its *Walker Process* fraud claim, but these allegations are addressed here.

"Unomedical was aware" (Dkt. 143 at 13, 16); and "Unomedical told" (Dkt. 143 at 16, 20). References to "Unomedical" do not satisfy the "who" pleading requirement for inequitable conduct, and certainly do not meet the elevated pleading requirement for *Walker Process* fraud. *See Exergen*, 575 F.3d at 1329 (pleading referring to "Exergen, its agents and/or attorneys" failed to identify the "who"); *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 795 (N.D. Ill. 2010) (dismissing complaint that failed to identify persons who made allegedly false statements); *Nieto v. Perdue Farms, Inc.*, No. 08 07399, 2010 WL 1031691, at *3 (N.D. Ill. Mar. 17, 2010) (failure to identify the names of specific individuals within company who made fraudulent misrepresentation did not satisfy "who" pleading requirement).

As also shown in Unomedical's opening brief, Smiths' *Walker Process* allegations fail to support a reasonable inference of fraudulent intent. (Dkt. 141 at 14-15.) In response, Smiths does not, and cannot, point to any fact pleadings that would give facial plausibility to its counterclaims. *See Ashcroft*, 129 S. Ct. at 1940, 1949.[7]

Smiths argues that Unomedical, as the assignee of the patent, must have known about the alleged § 112 patent invalidity. (Dkt. 143 at 16). Apparently, Smiths believes that any time an invalidity defense is alleged, a patent owner is vulnerable to an antitrust claim. The argument is not facially plausible; indeed, it is absurd. Not surprisingly, Smiths has not cited any support for its extreme position.

---

[7] Moreover, Smiths' case citations are inapposite. For example, *General Insurance Co. of America v. Clark Mall Corp.*, involved a dispute over insurance coverage for a fire at a discount shopping mall. No. 08 C 2787, 2010 U.S. Dist. LEXIS 98052 (N.D. Ill. Sept. 20, 2010). The fraud pleading survived because the pleadings set forth an extensive accounting of time, places, and people giving rise to the claim. *Id.* at *5-6. *GMP Technologies, LLC v. Zicam, LLC*, did not even involve a federal antitrust claim, but rather whether a state tort claim was preempted by federal law; moreover, the issue was decided under the general pleading requirement of Rule 8(a). No. 08 C 7077, 2009 U.S. Dist. LEXIS 115523 (N.D. Ill. Dec. 9, 2009).

Smiths next argues that "Unomedical was aware" of invalidating prior art, specifically, that Unomedical knew about the accused CLEO product. (Dkt. 143 at 16.) However, not once in its 29-page pleading did Smiths allege that the accused CLEO product is prior art.[8]

Smiths further argues that its allegation that Unomedical allegedly told Smiths' customers that "Smiths products infringe one or more valid Unomedical patents," "gives rise to a reasonable inference that Unomedical knew of the invalidity of the '492 patent's claims, yet accused Smiths of infringement anyway . . . ." (Dkt. 143 at 16.) Absent bad faith, however, a patent owner is legally permitted to advise others of alleged patent infringement.[9] *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998). How a legally permissible statement about infringement translates into knowledge of patent invalidity is not at all clear. Smiths' case citations are equally off the mark.[10] Smiths' *Walker Process* counterclaim should be dismissed.

### 2. Smiths' Sham Litigation Counterclaim Fails To Sufficiently Plead Objective and Subjective Baselessness

Smiths' sham litigation counterclaim rests on implausible and conclusory allegations that Unomedical's action is baseless. (Dkt. 19 ¶¶ 62, 110). However, the law is clear that a party asserting an antitrust claim may not rely on mere conclusions, but instead must allege "sufficient factual matter . . . [showing that] relief is plausible on its face." *Ashcroft*, 129 S. Ct. at 1949

---

[8] Indeed, Smiths is well aware that the accused CLEO product *is not* prior art.

[9] Smiths' allegations also are deficient because they fail to identify the "Smiths products" allegedly accused of infringement in the alleged communications, or which "one or more valid Unomedical patents" allegedly were mentioned in those communications. (Dkt. 19 ¶ 120.)

[10] *General Insurance* had nothing to do with patent invalidity or statements to prospective customers. *See* 2010 U.S. Dist. LEXIS, at *5-7. Moreover, unlike here, *In re DDAVP Direct Purchaser Antitrust Litigation*, involved a patent *already adjudicated unenforceable due to inequitable conduct.* 585 F.3d 677, 682-83 (2d Cir. 2009). Smiths' citation of *In re Gabapentin Patent Litigation*, is similarly unhelpful because there "the predicate facts," unlike here, were carefully alleged. 649 F. Supp. 2d 340, 363 (D.N.J. 2009).

(internal quotations omitted); *see also Bell Atl.*, 550 U.S. at 555-56. "Labels and conclusions" and "naked assertions devoid of further factual enhancement" are insufficient. *Ashcroft*, 129 S. Ct. at 1949; *see also Bell Atl.*, 550 U.S. at 555.

In essence, Smiths argues that its mere assertion of the usual patent defenses was enough to show objective baselessness and bad faith. On the contrary, a mere allegation of patent invalidity, without more, does not expose a patent owner to antitrust liability. *See Argus Chem. Corp. v. Fibre Glass-Evercoat Co.*, 812 F.2d 1381, 1386 (Fed. Cir. 1987) ("The allegation by the accused infringer that the patent is invalid—an assertion frequently made by those charged with infringement—cannot be turned into evidence that the patentee knew the patent was invalid when it instituted an infringement suit."); s*ee also Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 224 (S.D.N.Y. 2002) (conclusory allegations that defendants obtained patents by fraud on the PTO and defrauded the FDA by misstating their scope was an insufficient pleading of sham litigation).

Smiths' argument on non-infringement ignores its inconsistency. While Smiths alleges that Unomedical drafted claims to cover the accused device, (Dkt. 19 ¶ 68), if this were true, Unomedical could not be charged with knowledge that the accused product does not infringe.

Smiths also mischaracterizes Unomedical's position. Unomedical is not arguing that the presumption of validity *per se* shields it from a sham litigation claim. (*See* Dkt. 143 at 15.) Rather, Unomedical accurately notes that the '493 patent carries a presumption of validity and that the PTO Examiner considered the prior art asserted by Smiths before deciding to allow the '493 claims. Against that background, Smiths' conclusory, unsubstantiated allegations are an insufficient pleading of bad faith. (*See* Dkt. 141 at 16-18.) Smiths' sham litigation counterclaim should be dismissed.

### 3. Smiths' Minnesota Antitrust Counterclaim Falls With Its Other Antitrust Counterclaims

Smiths' antitrust counterclaim based on Minnesota law relies on the same theories as its federal antitrust counterclaims and fails for the same reasons. It should be dismissed.

### C. Smiths Failed To Sufficiently Plead Its False Advertising Counterclaims (Counterclaims IV And V)

Smiths argues that it only was required to plead a "basic outline" of fraud to support its Lanham Act counterclaims. Quite the contrary, Smiths was required to allege "the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *CardioNet, Inc. v. LifeWatch Corp.*, No. 07 C 6625, 2008 WL 567031, at *3 (N.D. Ill. Feb. 27, 2008); *see also* MPC *Containment, Sys., v. Moreland*, No. 05 C 6973, 2006 WL 2331148, at *2 (N.D. Ill. Aug. 10, 2006).

Smiths' opposition is glaringly silent on *CardioNet*, where the court dismissed a false advertising claim predicated on allegations very similar to those found in Smiths' false advertising pleadings. Thus, Smiths' failure to identify the alleged "specific individuals" who allegedly made false statements, and instead standing on a general pleading that "Unomedical" made false statements, falls short under *CardioNet*. 2008 WL 567031, at *3

Smiths likewise mistakenly argues that it satisfied the "what" requirement by pleading that Unomedical told Smiths' customers "that Smiths' products infringe one or more valid Unomedical patents." (Dkt. 143 at 19.) This allegation does not identify the statement, the "Smiths' products," or the "one or more valid Unomedical patents." It is as nebulous as the insufficient allegation in *CardioNet* about the comparative safety and performance of two products. 2008 WL 567031, at *3. As in *CardioNet*, both the Court and Unomedical are left to speculate what specific advertisements and statements underlie the claim. *Id.*

Smiths further mistakenly argues that it satisfied the "when" pleading requirement

because it allegedly is clear from the face of the pleading that the statement was made after the

patent issued, but before the lawsuit was filed.  (Dkt. 143 at 19.)  However, the patent issued on

August 5, 2008, and this action was not filed until July 21, 2009.  Alleging that a communication

occurred sometime during an almost one-year time frame does not meet the specificity

requirement of Rule 9(b).  *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.

1992) (rejecting argument that in cases involving a lengthy period of fraud, the exact date and

time of each fraudulent act need not be specifically alleged); *Tatum v. Oberg*, 650 F. Supp. 2d

185, 191 (D. Conn. 2009) (granting motion to dismiss fraud claim for failure to specify "when"

fraudulent statements were made; time period was not enough).  As for the "where" pleading

requirement, Smiths' pleading fails because it does not identify where the false advertisement

occurred.

With respect to the method by which the misrepresentation was made, Smiths now

clarifies that it allegedly occurred by "word of mouth."  (Dkt. 19 ¶¶ 43, 120.)[11]  However, word-

of-mouth communication does not constitute "commercial advertising" within the meaning of

the Lanham Act.  *See First Health Group Corp., v. BCE Emergis Corp.*, 269 F.3d 800, 803-04

(7th Cir. 2001).  An advertisement read by "thousands" or "millions" is advertising, whereas a

---

[11] In its pleadings, Smiths makes these allegations "upon information and belief." (Dkt. 19
¶ 48.)  By pleading "on information and belief" without specifying the underlying facts for that
belief, Smiths has not met the heightened pleading standard of Rule 9(b).  *See MPC Containment
Sys. Ltd.*, at *3 n.3 (noting that allegations based on "information and belief" typically do not
satisfy the rule 9(b) standard).  Smiths has no excuse for pleading only on "information and
belief" since its alleges that Unomedical made statements in "advertising or promotion," which,
if true, would have made the statements widely available, including to Smiths.  (Dkt. 19 ¶ 48.)
*See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, No. 93 C 20149, 1993 WL 515859, at *3
(N.D. Ill. Dec. 13, 1993) (holding that a claimant's allegations that the misrepresentations were
made through advertising prevented it from claiming that the facts to support its claim were
inaccessible to circumvent the 9(b) pleadings standard).

"person-to-person pitch by an account executive is not." *Id*. "Commercial promotion" requires a similar degree of dissemination. *See Installation Serv., Inc. v. Elec. Research, Inc.*, No. 04 C 6906, 2005 WL 645244, at *1 (N.D. Ill. Mar. 21, 2005).

Even a false statement cannot violate § 43 of the Lanham Act unless it was communicated through "commercial advertising." *ISI Int'l , Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (dismissing a Lanham Act claim because letters containing false information sent to the claimant's clients did not constitute "commercial advertising"); *Chicago Consulting Actuaries, LLC, v. Scrol*, No. 05 C 1320, 2005 WL 819555, at *3-4 (N.D. Ill. Apr. 6, 2005) (granting motion to dismiss because two "person-to-person" promotional encounters with the claimant's existing and prospective clients did not amount to "commercial advertising"); *see also Schwarz Pharma, Inc. v. Breckenridge Pharm., Inc.*, 388 F. Supp. 2d 967, 981-82 (E.D. Wisc. 2005) (holding that three personal statements to wholesalers did not constitute "commercial advertising"). Hence, even had Smiths met all the other pleading requirements for a false advertising claim, its Lanham Act counterclaim still must be dismissed because the action complained of does not constitute commercial advertising.

Smiths also mistakenly argues that it should be forgiven for failing to adequately plead bad faith because "other portions" of the counterclaims include sufficient facts. (Dkt. 143 at 20.) *See Caliber Partners, Ltd. v. Affeld*, 583 F. Supp. 1308, 1312 (N.D. Ill. 1984) (where some allegations were irrelevant to the pleaded count, the count was stricken because a party "cannot be required to parse the Complaint to pick out the allegations that do and do not form part of the cause of action. They are entitled to a more craftsmanlike pleading to which they can prepare an informed answer."). In any event, as discussed above and in Unomedical's opening brief (*see* Dkt. 141 at 19), *nothing* in Smiths' pleadings even approaches the high degree of specificity required under Rule 9(b). *See, e.g., Vanguard Prods. Group, v. Merch. Techs., Inc.*, No. 07-CV-

1405-BR, 2008 WL 939041, at *4-7 (D. Or. Apr.3, 2008) (Lanham Act counterclaim dismissed because the bad-faith element was insufficiently pled).

Finally, Smiths' Minnesota Deceptive Trade Practices ("MDPTA") counterclaim is fatally deficient for the same reasons as Smiths' Lanham Act counterclaim. Indeed, Smiths' opposition does not argue otherwise. (Dkt. 143 at 20-21.) Both the Lanham Act and MDPTA counterclaims should be dismissed.

### D.     Smiths Failed To Sufficiently Plead Its Tortious Interference Counterclaim (Counterclaim III)

Smiths' tortious interference counterclaim also fails to sufficiently plead bad faith for the same reasons that its Lanham Act counterclaim fails in this regard. Smiths' opposition does not argue otherwise. (Dkt. 143 at 21.) This counterclaim should be dismissed.

### E.     Smiths Failed To Sufficiently Plead Its Patent Misuse Affirmative Defense (Seventh Affirmative Defense)

Smiths' patent misuse affirmative defense, which Smiths only summarily addresses, (Dkt. 143 at 21-22), requires a showing of bad faith and falls with Smiths' other counterclaims. This defense should be stricken.

### F.     Smiths Should Not Be Given Leave To Amend Its Insufficient Pleadings

Smiths should not be given leave to amend. While it claims to be "in possession of additional facts which provide further illumination into the activities underlying its defenses and counterclaims," (Dkt. 143 at 2), its opposition does not even hint at what those alleged facts might be. Providing leave to amend would be futile. *See Nieto*, 2010 WL 1031691, at *5.

## III.     CONCLUSION

Smiths' affirmative defenses and counterclaims fall far short of the pleading requirements of the Federal Rules, for the many reasons addressed here and in Unomedical's opening brief.

The motion to strike Smiths' Fourth, Seventh, and Ninth Affirmative Defenses and to dismiss its Third through Eighth Counterclaims should be granted.

Respectfully submitted,

Dated:     November 12, 2010

/s/ Manish K. Mehta
Robert S. Mallin, Esq.
Anastasia Heffner, Esq.
Manish K. Mehta, Esq.
BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 N. Cityfront Plaza Dr.
Chicago, IL 60611
Telephone:     312-321-4200
Facsimile:     312-321-4299
Attorneys for Plaintiff
UNOMEDICAL A/S

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of

**Unomedical's Reply to its Motion to Strike Smiths' Fourth, Seventh, and Ninth Affirmative Defenses and to Dismiss Smiths' Non-Patent Counterclaims** was served on this 12th day of

November, 2010, to the following attorneys:

VIA NOTICE OF ELECTRONIC FILING THROUGH CM/ECF SYSTEM

Edward T. Colbert
John R. Hutchins
Kent P. Herman
KENYON & KENYON LLP
1500 K. Street, N.W.
Washington, DC 20005

Champ W. Davis, Jr.
Davis McGrath LLC
125 South Wacker Dr.
Suite 1700
Chicago, IL 60606


 /s/ Manish K. Mehta
BRINKS HOFER GILSON & LIONE